IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CELLAIRIS FRANCHISE, INC. and GLOBAL CELLULAR, INC., | : : : |
| Plaintiffs, | : : |
| v. | : CIVIL ACTION : NO. 2:15-cv-00101-WCO : |
| MICHAEL DUARTE, | : : |
| Defendant. | : |

## **ORDER**

This case illustrates the pitfalls inherent in drafting an arbitration provision that compels arbitration in some, but not all, cases. Plaintiffs are involved in the wireless accessory products and wireless device repair services industry. Defendant Michael Duarte was, until recently, employed by plaintiff Global Cellular and a member of Mobile Mania, LLC, which owns several Cellairis franchises. Cellairis and Mobile Mania entered into a franchise agreement for wireless accessories and repair kiosk located in a Boise, Idaho mall. The franchise agreement contains an arbitration clause, and defendant signed a guaranty agreement that incorporated, among other provisions, the non-compete, non-solicitation, confidentiality, and arbitration provisions in the franchise agreement.

The arbitration clause dictates that, as a general matter, all disputes, including disputes over the scope and validity of the agreement, are subject to arbitration. The provision also provides that the franchisor may *elect* to bring an action for equitable and injunctive relief in court rather than seek the same remedy through an arbitration proceeding.

The business relationship between plaintiffs and defendant withered, and plaintiffs then sought to enforce non-compete and confidentiality provisions of the franchise agreement against defendant by filing this suit and moving for a preliminary injunction. Defendant countered by invoking the franchise agreement's arbitration clause and moved the court to compel arbitration. The question presented by plaintiffs' motion for a preliminary injunction [5] and defendant's motion to compel arbitration [11] is whether this court retains jurisdiction to adjudicate plaintiffs' request for injunctive and equitable relief.

Relief lies in arbitration. The arbitration provision provides that the questions of arbitrability are the province of the arbitrator. The parties' dispute over the applicability and construction of the arbitration provision must be resolved by the arbitrator. Accordingly, the court will send this matter to arbitration and deny plaintiffs' request for a preliminary injunction.

**I. The Governing Agreements and Arbitration**

The franchise agreement's applicability to Duarte is indirect. The franchise agreement is between plaintiff Cellairis and a non-party, Mobile Mania, LLC. Duarte, formerly one of three equity holders in Mobile Mania, signed a separate "Personal Guaranty and Subordination Agreement" as part of the franchise transaction.[1]

The guaranty agreement incorporates the franchise agreement's arbitration provision. As part of the guaranty, Duarte agreed "to be individually bound by" certain covenants in the franchise agreement, including the arbitration provision. The guaranty agreement's treatment of arbitration is as follows:

> Subject to the arbitration obligations and other obligations of [the franchise agreement's arbitration provision], [Duarte] agrees that all actions arising under this Guarantee [sic] Agreement or the Franchise Agreement, or otherwise as a result of the relationship between Company and [Duarte], must be commenced in the state or federal court of general jurisdiction in Georgia, and [Duarte] irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, [Duarte] agrees that Company may enforce this Guarantee [sic] Agreement and any arbitration orders and awards in the courts of the state or states in which he or she is domiciled.

Guaranty, ECF No. 1-2).

---

[1] On April 27, 2015, defendant sold his one-third interest in Mobile Mania to another member of the LLC. (Duarte Aff. Ex. 12, ECF No. 19-12). The parties have not addressed what effect, if any, this transaction has on defendant's obligations under the franchise agreement or guaranty.

The arbitration provision is not a model of clarity. The operative language is a massive run-on sentence:

> All controversies, claims, or disputes between Company and Franchisee arising out of or relating to (I) this agreement or any other agreement between Company and Franchisee, (II) the relationship between Franchisee and Company, (III) the scope and validity of this agreement or any other agreement between Company and Franchisee (including the scope and validity of the arbitration obligations under this paragraph, which Company and Franchisee acknowledge is to be determined by an arbitrator and not a court), or (IV) the offer or sale of the franchise opportunity shall be determined by arbitration with the American Arbitration Association ("AAA") at the Atlanta office of the AAA, provided however that to the extent Company (i) seeks injunctive or other equitable relief to enforce provisions of this agreement, (ii) seeks relief of any kind with respect to Franchisee's violation of any health or safety law, (iii) seeks relief of any kind with respect to Franchisee's use of the marks, or (iv) seeks recovery or any other remedy with respect to any controversies, claims or disputes based on Franchisee's failure to pay any monies due hereunder when due, then Company may, in its sole discretion, either utilize the arbitration process described herein or bring an action with respect to such matters in any court of competent jurisdiction.

(Franchise Agreement 13(D), ECF No. 1-1).

The relationship between plaintiffs and defendant broke down, and defendant recently parted from plaintiffs over a compensation dispute and to pursue other business opportunities. Plaintiffs took the opportunity to sue defendant for breaching the non-competition and non-disclosure covenants and requested injunctive relief and attorneys' fees.

Before defendant appeared, plaintiffs apparently concluded that their claims for damages must be resolved in arbitration. They amended their complaint to request purely equitable relief. The amended complaint presents claims for breaches of the non-competition and non-disclosure covenants, breaches of contract for failing to return property and provide best efforts, generic injunctive relief, and contractual attorneys' fees.

### A. Defendant Wants Arbitration

Immediately after appearing, defendant moved the court to compel arbitration under the guaranty agreement. Defendant contends that the franchise agreement's arbitration provision binds him based on the explicit incorporation of the provision via the guaranty.

Defendant advances a two-prong argument. First, defendant argues that the claims presented by plaintiffs' complaint are subject to arbitration because the complaint requests monetary damages. Defendant concedes that the arbitration provision has several categories of "exempted claims," one of which is claims for injunctive or equitable relief. Defendant maintains plaintiffs' complaint does not present an exempt claim because "Plaintiffs originally sought, and presumably will seek in the future," compensatory damages for the alleged breaches. (Mot. Compel Arbitration 8, ECF No. 11). Defendant views plaintiffs' claims as "mixed relief" and,

therefore, not within the equitable exception to the arbitration provision. (*Id.* at 12-13, 15).

Second, defendant claims that even if the court could tease apart the equitable and legal strands of plaintiffs' claims, it is not the court's place to do so because questions of arbitrability are reserved for the arbitrator. Defendant emphasizes that the franchise agreement contains a delegation provision embodying the parties' intent for an arbitrator to decide questions of arbitrability. (*Id.* at 16-17). This provision, in defendant's construction of the agreement, places disputes over what claims are subject to arbitration and what claims may be vindicated in court within the exclusive jurisdiction of the arbitrator.

**B. Plaintiffs Oppose Arbitrating Claims Seeking Injunctive or Equitable Relief**

Plaintiffs want to stay here. Plaintiffs argue that the arbitration provision clearly and unambiguously carves out claims for injunctive or equitable relief. They characterize defendant's motion as an attempt to "create a dispute post-hoc by merely presenting a contrary interpretation that has no support in the actual language of the contract." (Supp. Resp. 5, ECF No. 20). Plaintiffs note that the Eleventh Circuit favors arbitration but does not mandate it; parties remain free to structure their arbitration agreements as they see fit. Plaintiffs complain that defendant's position

renders the exceptions to the arbitration provision superfluous and undermine the text evincing the parties' agreement to arbitrate some, but not all, disputes arising from the guaranty and franchise agreement.

## II. Principles Guiding Arbitration Determinations

Arbitration is "a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Like any other contract, an arbitration agreement must be enforced according to its terms–no more, no less. *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014). Unlike many other principles governing contract construction, this principle is federally guaranteed. The Federal Arbitration Act ("FAA") tempered "widespread judicial hostility to arbitration" by proclaiming that arbitration provisions are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-09 (2013) (quoting 9 U.S.C. § 2). Consistent with that text, "courts must 'rigorously enforce' arbitration agreements according to their terms" and recognize the contracting parties' "substantial leeway to define the terms and scope of their agreement" as they see fit. *See id.* at 2309; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 77 (2010) (Steven, J., dissenting).

That leeway includes modifying the rules under which the arbitration will proceed, *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478-79 (1989), choosing who will serve as the arbitrator, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57 (1974), selecting which parties must resolve their disputes through arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983), and committing some issues to the judgment of the arbitrator while reserving others for a court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85-86 (2002).

There is, without question, a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses*, 460 U.S. at 24). The FAA's pro-arbitration policy counsels that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, a presumption of arbitrability. *Moses*, 460 U.S. at 24-25.

The FAA's pro-arbitration policy is subordinate to the "principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.'" *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 302 (2010) (quoting *First Options*, 514 U.S. at 943). The presumption applies only "where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to

8

arbitrate was" validly formed, legally enforceable, and best construed to encompass the dispute. *Id.* Although the parties' intentions are "generously construed as to issues of arbitrability," the parties' intentions may not be judicially massaged into something else entirely. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

### III. Who Decides?

"[W]hether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam*, 537 U.S. at 83 (quoting *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986) (emphasis omitted)). Parties to a contract may "clearly and unmistakably" demonstrate that an arbitrator should decide questions of arbitrability by including language indicating such, *CPR–Cell Phone Repair Franchise Sys., Inc. v. Nayrami*, 896 F. Supp. 2d 1233, 1235, 1240-41 (N.D. Ga. 2012), or incorporating the AAA's rules into their agreement, *see Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005).

#### A. The Arbitrator Decides

Questions of arbitrability are reserved for the arbitrator. Here, the guaranty agreement is "subject to" the franchise agreement's arbitration provision. (*See*

Guaranty, ECF No. 1-2). The subsequent language in the guaranty agreement is therefore limited by the franchise agreement's arbitration provision. *Cf. United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 833-34 (Del. Chancery 2007) (holding that the phrase "subject to" imposes a "hierarchy among provisions" and subordinates one provision to the language of another).

The franchise agreement's arbitration provision states that the scope of the arbitration provision is a matter for the arbitrator to decide, and the arbitration provision also incorporates the AAA rules into the agreement. These facts alone are dispositive.

The parties' agreement expressly reserved questions of arbitrability for the arbitrator. The arbitration provision states that the parties must arbitrate any claims or disputes arising out of or relating to "the scope and validity of this Agreement or any other Agreement between Company and Franchisee (including the scope and validity of the arbitration obligations under this paragraph, which Company and Franchisee acknowledge is to be determined by an arbitrator and not a court) . . . ." (Franchise Agreement 63, ECF No. 1-1). This provision evinces a "clear and unmistakable" intent to delegate questions of arbitrability to the arbitrator, and courts have overwhelmingly found that provisions like this one remove scope determinations from the court's purview. *See, e.g., U.S. Nutraceuticals, LLC v.*

*Cyanotech Corp.*, 769 F.3d 1308, 1310-11 (11th Cir. 2014); *CPR–Cell Phone Repair Franchise Sys., Inc.*, 896 F. Supp. 2d at 1240-41.

The presence of a provision authorizing plaintiffs to opt out of the arbitration clause does not change the outcome.  Plaintiffs argue that there is no question of arbitrability to be decided because the arbitration provision facially provides an election between court and arbitration for claims seeking injunctive and equitable relief.  Plaintiffs seek to sidestep the "question of arbitrability" inquiry by arguing that "it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers this dispute."  (Supp. Resp. 6, ECF No. 20).

This argument, however, blends the question of arbitrability inquiry and the scope inquiry.  The Court of Appeals for the Ninth Circuit addressed the same issue in *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013).

In *Oracle*, the only issue before the court of appeals was whether the parties agreed to arbitrate arbitrability.  *Id.* at 1072.  The arbitration provision was strikingly similar to the provision before this court.  The provision stated that any disputes arising out of or related to a licensing agreement "shall be finally settled by arbitration as set out herein, except that either party may bring any action, in a court of competent jurisdiction . . . with respect to any dispute relating to such party's

Intellectual Property Rights or with respect to" an intellectual property license. *Id.* at 1071. The provision also provided that the arbitration would be conducted in accordance with the rules of the United Nations Commission on International Trade Law ("UNCITRAL"). *Id.*

Oracle filed suit against Myriad in the Northern District of California asserting claims for breach of contract, violation of the Lanham Act, copyright infringement, and unfair competition. Myriad moved to compel arbitration.

The district court granted Myriad's motion to compel arbitration with respect to Oracle's breach of contact claim but retained Oracle's remaining claims by finding that "incorporation of the UNCITRAL arbitration rules did not constitute clear and unmistakable evidence that the parties intended to delegate questions of arbitrability to the arbitrator. *Id.* at 1073. The district court reasoned that Oracle's other claims must be resolved in court because the arbitration clause stated that "the [district] court's jurisdiction is 'exclusive' with respect to a party's intellectual property claims or claims arising out of the TCK License . . . ." *Id.* at 1072. The district court construed this language to mean that the parties intended for the court to decide questions of arbitrability relating to (1) the parties' intellectual property rights and (2) the parties' compliance with the TCK License. *Id.*

12

On appeal, Oracle argued that the carve-out provision in the arbitration clause illustrated the parties' intent that a court would decide arbitrability. The court of appeals rejected this argument. The court of appeals reasoned that Oracle conflated "the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Id.* The court held that the "decision that a claim relates to intellectual property rights or compliance with the TCK License constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules." *Id.* at 1076.

The court of appeals rejected Oracle's proposal to adopt a rule where the court retained authority to address questions of arbitrability despite the presence of a delegation clause if the claims in question were not arguably covered by the agreement. *Id.* at 1075-76. The court reasoned that such a rule encroaches on the arbitrator's domain because a court necessarily decides arbitrability by finding that a claim falls within the scope of a carve-out provision. *See id.*

This court finds *Oracle* persuasive. Here, the parties expressly delegated questions of arbitrability to the arbitrator and incorporated the AAA rules which, like the UNCITRAL rules, provide that questions of arbitrability are reserved for the arbitrator. The court must apply the parties' arbitration provision as written. The

agreement clearly and unmistakably delegates *all* questions of arbitrability to the arbitrator. Plaintiffs, in effect, ask the court to rewrite the arbitration clause so that questions of arbitrability relating to claims that may be brought in court or in arbitration are reserved for the court and all other questions of arbitrability belong to the arbitrator.

The Eleventh Circuit has not addressed the precise issue before the court, but this court believes that *Oracle* is consistent with decision in this circuit that expressly hold that the incorporation of the AAA rules into an arbitration clause demonstrates that the parties to an agreement "clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator." *See U.S. Nutraceuticals, LLC*, 769 F.3d at 1311 (interpreting and applying *Terminix Int'l Co.*, 432 F.3d at 1332).

The scope of a carve-out provision constitutes an arbitrability determination. *See Oracle Am., Inc.*, 724 F.3d at 1076 ("The decision that a claim relates to [an excepted claim] constitutes an arbitrability determination. . . ."). Arbitrability determinations, without exception, are reserved for the arbitrator. Any decision to the contrary would represent a departure from the parties' clear and unmistakable intent to submit questions of arbitrability to the arbitrator. Therefore, the court must refrain from addressing the scope of the carve-out provision and faithfully apply the arbitration provision as it is written.

14

Plaintiffs cite at least one decision where a court of appeals found that a court could make arbitrability determinations even though the parties delegated that question to the arbitrator if the claims were not at least arguably covered by the agreement. *See Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011). The court does not find *Turi*'s reasoning to be compelling in light of the Ninth Circuit's critique and the Eleventh Circuit's decision in *Nutraceuticals*, which held that the incorporation of AAA rules, even absent language expressly delegating questions of arbitrability to the arbitrator, is sufficient to clearly and unmistakably remove arbitrability determinations from the court's purview. *See U.S. Nutraceuticals, LLC*, 769 F.3d at 1311-12. Additionally, *Turi*'s reasoning requires claims that are not at least arguably covered by the arbitration provision. Here, plaintiffs' claims *are* covered by the arbitration provision; at most, plaintiffs may *elect* to bring otherwise arbitrable claims in court. This is a far cry from *Turi*, which involved claims that were "clearly outside the scope of the arbitration clause." *Turi v. Main Street Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011) (refusing to compel arbitration of claims for civil conspiracy, fraudulent misrepresentation, and similar claims when the arbitration provision was limited to claims "regarding fees" and claims of $5,000 or less).

## IV. Everything Goes to Arbitration

The court can define the scope of an arbitration clause only if the court has the authority to make arbitrability determinations. Because the parties expressly delegated that authority to the arbitrator and because the parties' agreement incorporates the AAA rules, the court is precluded from determining whether plaintiffs may bring the claims presented in their complaint in court. *Terminix Int'l Co.*, 432 F.3d at 1332. Therefore, the court finds that *all* of plaintiffs' claims must be first presented in arbitration; the arbitrator must determine whether plaintiffs may bring their claims for injunctive and equitable relief under the opt-out provision in the arbitration clause.

## V. Plaintiffs' Request for Preliminary Injunctive Relief

Plaintiffs also ask the court to impose a preliminary injunction preventing defendant from violating his non-compete and confidentiality obligations. First, plaintiffs argue that the preliminary injunctive relief is outside the scope of the arbitration clause. Because the court has determined that the arbitrator must decide the arbitrability of plaintiffs' claims, the court cannot enter a preliminary injunction on this basis. Second, plaintiffs contend that the court still retains the authority to enter an *interim* preliminary injunction to prevent irreparable harm pending the

arbitrator's determination on whether plaintiffs may seek equitable relief in this court.[2]

Plaintiffs seek to avoid the result compelled by an arbitration provision they drafted. Questions of arbitrability and the merits of any dispute *must* be initially handled by the arbitrator. Plaintiffs cannot reassign preliminary relief determinations from arbitration to this court by casting their request as interim relief pending arbitration.

Certainly, the court has the power to maintain the status quo to prevent the nullification of the arbitration process. *See H20 To Go, L.L.C. v. Martinez*, 2005 WL 2065220, at *4-5 (S.D. Fla. Aug. 22, 2005). But preventing the nullification of the arbitration process is not equivalent to authorizing a court to examine claims that would otherwise be subject to mandatory arbitration. *See id.* at *3-4 (holding that an arbitration clause significantly "alters the authority of the Court" and prevented court resolution of certain disputes because doing so "would effectively strip or otherwise interfere with the arbitrator's ability and power to make such a determination") (citations omitted).

---

[2] Plaintiffs did not raise this argument in their motion or supplemental responses but did present this reasoning as an alternative basis for the entry of an injunction during a hearing on the pending motions.

Here, plaintiffs have not demonstrated that waiting until the arbitrator's decision on questions of arbitrability would "eviscerate the arbitration process and make it a 'hollow formality,' with needless expense to all concerned." *Specialty Bakeries, Inc. v. RobHal, Inc.*, 961 F. Supp. 822, 830 (E.D. Pa. 1997) (quoting *United States v. District of Columbia*, 654 F.2d 802, 809 n.16 (D.C. Cir. 1981)).  Instead, the court will enforce the arbitration clause between the parties rather than facilitate a party's attempt to circumvent arbitration by claiming irreparable injury pending the arbitrator's decision on questions of arbitrability.  Holding otherwise would allow a party to request–and potentially obtain–preliminary injunctive relief in court even if determinations on the validity of such relief were unconditionally subject to arbitration.

Therefore, the court will deny plaintiffs' request for preliminary injunctive relief without prejudice.

## VI. Conclusion

The court hereby **GRANTS** defendant's motion to compel arbitration [11] and **DENIES** plaintiff's motion for a preliminary injunction [5].  This case is hereby **STAYED** until the arbitrator makes a determination on questions of arbitrability.  *See* 9 U.S.C. § 3 (requiring courts to stay matters referred to arbitration "until such arbitration has been had in accordance with the terms of the agreement").  The parties

are **DIRECTED** to file a jointly prepared status report no later than ten days after the arbitrator resolves the pending questions of arbitrability.

IT IS SO ORDERED, this 20th day of July, 2015.

                                                   s/*William C. O'Kelley*
                                                   William C. O'Kelley
                                                 Senior United States District Judge