**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| CELLAIRIS FRANCHISE, INC. and | ) | |
| GLOBAL CELLULAR, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action File No. |
| | ) | |
| v. | ) | 2:15-cv-00101-WCO |
| | ) | |
| MICHAEL DUARTE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO QUASH OR MODIFY THIRD-PARTY SUBPOENAS

Defendant Michael Duarte ("Duarte") is asking the Court to protect from disclosure the very information that evidences his violation of the non-competition and non-disclosure covenants of the Franchise Agreement, and very possibly evidence showing his violation of the Court's preliminary injunction Order. Plaintiffs Cellairis Franchise, Inc. ("Cellairis") and Global Cellular, Inc. ("Global") (collectively, "Plaintiffs") have issued seven targeted subpoenas for documents on the non-parties with which Plaintiffs have evidence Duarte has communicated or worked for in violation of his contractual covenants, which is the basis for Plaintiffs' request for injunctive relief in this case. Therefore, these subpoenas seek documents that are centrally relevant to this litigation.

1

Duarte complains that disclosure of information about his "post-employment activities in the wireless accessories and repair industry" will allow Plaintiffs to gain an "unfair competitive advantage." *See* Motion to Quash, or in the Alternative, Modify Third-Party Subpoenas [Doc. 54] ("Motion" or "Motion to Quash") at 8 (¶ 14). This apparent *admission that Duarte is competing* with Plaintiffs in the wireless accessories and repair industry highlights the clear relevance of, and Plaintiffs' need for immediate and unobstructed access to, the requested documents. For these reasons and those discussed below, Plaintiffs request that this Court deny Duarte's Motion to Quash, which is a transparent effort to try to prevent Plaintiffs from obtaining additional evidence that Duarte has violated his contractual covenants to Plaintiffs.

## Factual Background and Procedural History

### A.   Duarte's Competitive Activities and Misuse of Confidential Information are the Heart of this Dispute.

Plaintiffs filed this action seeking preliminary and permanent injunctive relief against Duarte to stop Duarte's continuing breaches of non-competition, non-disclosure, and other obligations set forth in a Franchise Agreement entered into between Cellairis and Mobile Mania, LLC (the "Franchise Agreement"). *See* First Amended Complaint [Doc. 7]; Exhibit A to First Amended Complaint [Doc. 7-1] (Franchise Agreement). Duarte personally guaranteed those covenants and agreed

2

to be bound by them.  *See* Exhibit B to First Amended Complaint [Doc. 7-2] (Personal Guaranty).

Plaintiffs' business specializes in the sale of wireless device accessories and in providing wireless device repair services, primarily through the operation of Cellairis kiosks and retail outlets.  *See* First Amended Compl. ¶¶ 8-11; Declaration of Kostantinos Skouras [Doc. 5-2] ("First Skouras Decl.") ¶¶ 5-7.   Global's business involves finding, negotiating for, and leasing favorable retail space, particularly in shopping malls, at which to open Cellairis outlets, and then subleasing that space to Cellairis franchisees.  First Amended Compl. ¶¶ 10, 29; First Skouras Decl. ¶ 9.  The wireless accessory and repair field that Plaintiffs occupy is an extremely competitive industry.  First Amended Compl. ¶ 28; First Skouras Decl. ¶ 13.  Duarte admits as much in his Motion to Quash.  *See* Motion at 4 (¶ 5) and 7 (¶ 12).

As shown in Plaintiffs' preliminary injunction motion, Duarte learned confidential information regarding Plaintiffs and their business both from his role as an owner and operator of several Cellairis franchisees and from his years-long tenure as an employee of Global and Vice President of Plaintiffs, in which he focused on real estate development.  First Amended Compl. ¶¶ 12, 18, 27, 30-34; First Skouras Decl. ¶¶ 17-19, 28-29, 43-47.   In these roles, Duarte learned

invaluable information about Plaintiffs' business, scouting of locations, and negotiation of leases with mall operators.  *Id.*  In connection with his role as part owner and principal of Mobile Mania, LLC, a franchisee that operates multiple Cellairis Business Units, Duarte personally agreed to be bound by the non-competition and non-disclosure covenants set forth in Mobile Mania's Franchise Agreement with Cellairis.  First Amended Compl. ¶¶ 25-27; Franchise Agreement § 8(C)(3)-8(D)(1)-(3); Personal Guaranty.

On March 4, 2015, Duarte abruptly terminated his positions with and services for Plaintiffs.  *See* First Amended Compl. ¶ 35; First Skouras Decl. ¶¶ 48-49.  At that time, Duarte claimed to be "moving in a different direction" and working in an industry that would not compete with Plaintiffs.   Doc. 5-12.  Contrary to these representations, there is overwhelming evidence that Duarte has been actively competing against Plaintiffs in the wireless accessory and repair industry in direct violation of his non-competition covenant to Plaintiffs.  Plaintiffs submitted and summarized this evidence, including e-mail communications *with each of the mall operators whose subpoenas are the subject to this Motion* and Duarte's own admissions, with their preliminary injunction motion.  *See* First Skouras Decl. [Doc. 5-2 – 5-21]; Declaration of Jaime Brown [Doc. 5-22 – 5-24]; Declaration of Melissa Yanko [Doc. 12]; Second Declaration of Kostantinos

Skouras [Doc. 21 – 21-15] ("Second Skouras Decl."); Third Declaration of Kostantinos Skouras [Doc. 31 – 31-1] ("Third Skouras Decl.").

Plaintiffs have learned, among other things, that: (1) Duarte has been involved with a wireless device repair business called "Quick Fix" operating at a General Growth Properties mall in which Cellairis also operates a kiosk; (2) Duarte, along with Uzeyir Tari of Peace Corporation, has been involved in efforts to lease space for a potential cellular and accessory repair business called "Fix Color & More" in a Taubman mall which is only approximately five miles from a Cellairis location; (3) Duarte has contacted leasing agents with Simon Malls to discuss opening competing wireless device repair stores; and (4) in May 2015, Duarte attended a major leasing conference in Las Vegas, the purpose of which is to facilitate networking between businesses, mall operators, and leasing agents, at which he was seen interacting with Mr. Tari and at which he had scheduled a meeting with Macerich, a major mall operator. *See* First Skouras Decl. ¶¶ 52-68 (and attached exhibits). Plaintiffs have also submitted evidence showing that Duarte has been involved in leasing space from Simon Malls for wireless accessory and repair stores under the name "Quick Fix" in several different states. *See* Second Skouras Decl. ¶¶ 22-26 (and attached exhibits); Third Skouras Decl. ¶¶ 3-6 (and attached exhibits).

**B.     The Court's Preliminary Injunction Against Duarte.**

On October 21, 2015, the Court found that Plaintiffs have provided sufficient evidence to show a substantial likelihood of success on the merits of their claim that Duarte has breached his non-competition covenant to Plaintiffs and granted Plaintiffs' motion for preliminary injunction.  *See* Order [Doc. 34] ("Preliminary Injunction Order").  The Order enjoined Duarte from violating the restrictive covenants in the Franchise Agreement and specifically prohibited Duarte from "negotiating leases and consulting in the cellular phone and wireless device accessory-and-repair industry" on behalf of any individual or entity, including, but not limited to, Quick Fix and Fix Color & More in violation of the restrictive covenants.  *See* Order at 22.

**C.     Plaintiffs Seek Discovery to Corroborate Duarte's Violations.**

Since the Court entered its Preliminary Injunction against Duarte, Plaintiffs have obtained evidence suggesting additional violations by Duarte of his non-competition and non-disclosure agreements.  In November 2015, Plaintiffs learned that Duarte may been involved in leasing space from Simon Malls at the Mall of Georgia, where there are also Cellairis Business Units, for wireless stores operating under the name "The Fix."  Plaintiff also learned in November 2015 that Duarte was reportedly in discussions with General Growth Properties regarding the

6

potential leasing of a cellular repair kiosk.  In January 2016, Plaintiffs learned that Starwood Retail Partners was considering entering two leasing deals with someone named "Michael Anthony," a possible pseudonym for Duarte, on behalf of "The Fix."  Now that the discovery period has opened, Plaintiffs are seeking discovery to determine whether these events constitute additional violations of Duarte's non-competition and/or non-disclosure obligations to Plaintiffs, and whether Duarte has violated the Court's Preliminary Injunction Order.

Shortly after the discovery period opened, Cellairis issued the seven document subpoenas at issue on March 8, 2016 and notified Duarte prior to service on the non-parties.  *See* Doc. 53.  The subpoenas directly seek to corroborate and determine the extent of Duarte's violations of his non-competition covenant, as well as to determine whether Duarte has violated the Court's Preliminary Injunction Order.  The subpoenas seek limited information about Duarte's involvement in the leasing, opening, or operating of wireless device accessories and wireless device repair outlets, either on his own behalf or on the behalf of several entities involved in the wireless device and repair industry with whom Duarte is known to have been associated (*i.e.*, Quick Fix, The Fix, and Fix Color & More).

Three days after Plaintiffs issued the subpoenas, Duarte filed his Motion to

Quash [Doc 54], without making any effort to contact Plaintiffs to discuss his purported concerns about the subpoenas.

<u>**Argument and Citation of Legal Authorities**</u>

**I.      Duarte does not have standing to bring the Motion to Quash.**

None of the seven subpoenas Duarte seeks to challenge are directed to Duarte or seek documents from him.  The non-parties who are actually subject to the subpoenas have not filed their own motions to quash the subpoenas.  Because the subpoenas do not seek information from or impose any burden on Duarte, he does not have standing to challenge the subpoenas.  Duarte's Motion should be denied for this reason alone.

"Under Rule 45, ordinarily a party does not have standing to quash a subpoena served on a third party unless the party seeks to quash based on a personal right or privilege releating to the documents being sought."  *Bahrami v. Maxie Price Chevrolet-Oldsmobile, Inc.*, No. 1:11-CV-4483-SCJ-AJB, 2013 WL 3800336, at *2 (N.D. Ga. June 19, 2013); *see also* Wright & Miller, FED. PRAC. & PROC. CIV., § 2463.1 (3d. ed.) ("Numerous cases have held that a party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena.").

Courts have recognized such "personal rights or privileges" in only a few

discrete contexts, such as when a subpoena seeks a party's medical or mental health records, or a subpoena requests that party's own documents.  *See Stevenson v. Stanley Bostitch, Inc.,* 201 F.R.D. 551, 555 (N.D. Ga. 2001) (finding a party had standing to object to a subpoena requesting her confidential psychiatric records); *United States Willis v. SouthernCare, Inc.*, No. CV410-124, 2015 WL 5604367, at *2-3 (S.D. Ga. Sept. 23, 2015) (acknowledging standing of hospital to challenge subpoena requesting its own documents in the possession of its independent review organization).  An allegation that the documents are "confidential," without more, is not enough to give rise to standing.  *In re Rum Mktg. Int'l, Ltd.*, No. 07-21466-MC, 2007 WL 2702206, at *4 (S.D. Fla. Sept. 14, 2007) (denying motion to quash third-party subpoena because a moving party does not have standing to quash subpoena where the third-party subject to the subpoena has not challenged the subpoena and moving party's objections are based only on "confidential" nature of information).  Moreover, "even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden."  *SouthernCare, Inc.*, 2015 WL 5604367 at *2 (internal citations and quotation marks omitted).

Duarte does not have standing to challenge these subpoenas. First, the information sought is not in Duarte's possession, but in the possession of the

subpoenaed parties.   Second, Plaintiffs are not seeking personal or privileged records, such as attorney-client communications or Duarte's health records. Duarte's naked allegation—without any evidentiary support—that the information sought is "confidential" is not sufficient to confer standing.   *In re Rum Mktg. Int'l, Ltd.*, 2007 WL 2702206 at *4; *SouthernCare, Inc.*, 2015 WL 5604367 at *2-3.[1]

While Duarte's lack of standing is sufficient by itself to warrant denial of Duarte's Motion to Quash, as shown below, this Court should in any event deny Duarte's Motion because it is meritless.

## II. Duarte has Failed to Provide Evidence in Support of his Motion, and Plaintiffs' Need for the Requested Information Outweighs Any Claim of Confidentiality.

Duarte has provided no legitimate basis for preventing production of the

---

[1] In addition, Duarte did not file his Motion in the correct forum.  The current version of Rule 45 requires that "the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires … disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B); *see also* Fed. R. Civ. P. 45 Committee Notes to 2013 Amendments ("[L]ocal resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c)").  Rule 45 also now provides for the transfer of a subpoena-related motion to the issuing court (here, this Court) if *the person subject to the subpoena* consents to transfer or under exceptional circumstances.  Fed. R. Civ. P. 45(f).  Although Plaintiffs do not object to the Motion proceeding before this District, Plaintiffs do not have the authority to consent to transfer (had Duarte filed his Motion in the correct courts in the first place)—only the non-parties subject to the subpoenas can do so.  *Id.*

requested materials, and the Court should deny Duarte's Motion on the merits for several reasons.  First, Duarte has failed to present any objections with specificity.  His blanket attack on all seven subpoenas as a whole—without identifying particular objections in response to each individual request, particularly when the subpoenas clearly request relevant information—is insufficient under the law of this Circuit.  Second, Duarte has not offered any evidence supporting his claims that the information sought is a trade secret or confidential commerical information.  Third, even if some of the documents that might be produced in response to the requests might contain confidential information, Plaintiffs are nonetheless entitled to such information because it is directly relevant to this litigation.  Duarte's competitive activities are central to this litigation, and thus the need for such information outweighs any claim of confidentiality.

### A.    Duarte's Blanket Attack on the Seven Subpoenas Falls Short of the Requirements of Rule 45.

Duarte's broad attack on all seven subpoenas without raising any specific objections falls far short of the requirements of Rule 45.  As the moving party, Duarte has the burden to present specific objections to the individual document requests.  *See Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007) (non-specific objections to discovery requests are "not [] legitimate objection[s]" and put the requesting party in the unfair position of lacking "sufficient

information to understand either the scope of the objection, or to frame any argument as to why that objection is unfounded"); *Sherwood v. Michelin N. Am., Inc.*, No. CIV-A-706CV93 (HL), 2007 WL 431090, at *2 (M.D. Ga. Feb. 2. 2007) (denying motion to quash and finding plaintiff had failed to meet his burden in supporting motion because "Plaintiff [chose] to provide the Court with nothing more than vague averments").

Like the non-parties in *Carnes* and *Sherwood*, Duarte has not offered sufficient information for Plaintiffs to understand the specific basis of his objections to each subpoena.  Duarte's boilerplate blanket objection to all seven subpoenas on the basis of "confidentiality" is wholly insufficient.  Duarte's allegation that the subpoenas are "overbroad" on their face also cannot be afforded any weight.  *See Carnes*, 244 F.R.D. at 698; *SouthernCare, Inc.*, 2015 WL 5604367, at *2 (regardless of privacy interest, party other than subpoenaed party has no standing to object on the basis of overbreadth).

**B.     Duarte has Failed to Present any Evidence in Support of his Claim of Confidentiality.**

Duarte has not offered any evidence—testimonial or otherwise—that the information sought is "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45.  "The burden of proof in demonstrating that compliance with the subpoenas requires the disclosure of

privileged or protected information or that compliance presents an undue burden lies with the moving party." *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007), modified in part on reconsideration, No. 3:07-MC0420J032MCR, 2008 WL 68594 (M.D. Fla. Jan. 4, 2008); *see also In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2010 WL 234797, at *4 (M.D. Ga. Jan. 14, 2010) ("conclusory and generalized assertions" that the requested information qualify as trade secrets are not enough to allow "the Court to make a thorough factual determination as to whether the documents are, in fact, trade secrets that have been kept confidential").

Unlike the substantial and detailed evidence Plaintiffs submitted with their preliminary injunction motion to establish the existence of their confidential information, Duarte has not offered *any* evidence or supporting affidavits showing that the information requested in the subpoenas is either a trade secret belonging to him or confidential research, development, or commercial information belonging to him and falling within the protections of Rule 45. In his Motion, Duarte states in conclusory fashion only that Plaintiffs are "seeking confidential and sensitive commercial information." Motion at 5. This is not enough. "Trade secret or commercially sensitive information must be 'important proprietary information' and the party challenging the subpoena must make a 'strong showing that it has

13

historically sought to maintain the confidentiality of this information.'" *In re Subpoena of DJO, LLC*, 295 F.R.D. 494 (S.D. Cal. 2014) (internal citation omitted).

Duarte fails to identify specifically *what* information he claims is confidential and sensitive. He does not even identify the categories that the allegedly confidential information fall into (*e.g.*, technical data, formulas, methodology, financial data, etc.),[2] let alone show that he has historically sought to maintain the confidentiality of such information. Without any detail about what type of information Duarte claims will be divulged, Plaintiffs—and the Court—cannot reasonably evaluate Duarte's claim of confidentiality. *In re Mentor Corp.*, 2010 WL 234797, at *4.

Even Duarte's own legal authority recognizes the movant's burden to show that the information sought contains trade secrets. *See Echostar Communications Corp. v. News Corp, Ltd.*, 180 F.R.D. 391 (D. Colo. 1998) ("In order to resist discovery, movants must establish that the information sought is a trade secret, and demonstrate that disclosure might be harmful"; subpoenaed party provided affidavits describing the nature of the confidential information sought and the risk

---

[2] For categories of information recognized as trade secrets under Georgia law, *see* O.C.G.A. § 10-1-761.

disclosure of such information posed to that party's business); *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987) (subpoenaed party "submitted an affidavit explaining why the requested discovery contained trade secrets and other confidential business information"). Here, Duarte has offered no affidavits, no documents, and no detailed allegations whatsoever in support of his claim that the documents at issue contain trade secrets or other confidential information belonging to him. Moreover, to the extent Duarte's communications with the third parties at issue do contain confidential information about mall leasing issues, that information likely belongs to *Plaintiffs*, and Duarte's communications could be further evidence of his violation of his non-disclosure obligations to Plaintiffs.

The legal authorities Duarte cites differ significantly from the present matter. In Duarte's cases, the motions at issue were filed by the non-party actually subject to the subpoena. *See*, *e.g.*, *Am. Standard*, 828 F.2d 734 (non-party subpoenaed in patent litigation); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525 (D. Del. 2002) (patent litigation involving subpoena of non-party who had gone to great lengths to protect trade secrets, including ensuring confidentiality

agreements were in place);[3] *Narcoosee Acquisitions, LLC v. Kohl's Dept. Stores, Inc.*, No. 6:14-cv-203-Orl-41 TBS, 2014 WL 4279073, at *1-3 (M.D. Fla. Aug. 28, 2014).[4]

### C.   Because the information sought is pivotal, the need for disclosure outweighs Duarte's claim to privacy.

Even if the Court were to find that Duarte has met his burden of showing that the requested information contains trade secrets or confidential commercial information belonging to him, Plaintiffs are nonetheless entitled to the requested information.   The information sought is centrally relevant to the litigation, and Plaintiffs need for discovery outweighs any claim of confidentiality.

### 1.   The Information Plaintiffs Seek is Directly Relevant to the Litigation.

---

[3]   Moreover, the majority of the cases Duarte cites arise in the patent law context where is extreme commercial sensitivity to the divulgence of proprietary formulas.

[4]   Duarte's reliance on *Narcoosee* is also misplaced because *Narcoosee* involved dissimilar circumstances. There, defendant Kohl's Department Stores sought extensive sensitive information about leasing agreements that contained attorney-client privileged information from non-party and competitor, Ross Stores. *Narcoosee Acquisitions, LLC v. Kohl's Dept. Stores, Inc.*, No. 6:14-cv-203-Orl-41 TBS, 2014 WL 4279073, at *1-3 (M.D. Fla. Aug. 28, 2014).  The court quashed the subpoena primarily due to Kohl's disregard for the appropriate procedures under Rule 45. *Id.* at *2.  The court indicated that had Kohl's abided by Rule 45 and responded in good faith to Ross's objections, it would have opted to modify rather than quash the subpoena. *Id.* at *3.  The court also suggested that, in any event, it would have allowed disclosure of the confidential information at issue with the presence of an appropriate confidentiality agreement. *Id.*

The subpoenas seek targeted information from mall lessors, Peace Corporation, and Uzeyir Tari about Duarte's involvement in the leasing or operations of retail outlets specializing in the sale of wireless device accessories or wireless device repairs. Determining the extent to which Duarte has been involved in such operations is vital given that the precise issue being litigated is whether Duarte has violated his non-competition and non-disclosure covenants through such conduct, including through his interactions with these exact parties.

Plaintiffs are entitled to take discovery from these third parties to corroborate and supplement the evidence they submitted with their preliminary injunction motion that Duarte has violated his non-competition and non-disclosure covenants by working in the wireless device accessories and wireless device repair industry in a capacity competitive to Cellairis. Plaintiffs have issued subpoenas only to those non-parties with whom Plaintiffs have evidence or specific reason to believe that Duarte has engaged in conduct that violates his non-competition covenants.[5] While the evidence that Duarte has violated his non-competition

_____

[5] *Compare* Doc. 54-1, pp. 1-27 (Subpoena to Simon) *with* Doc. 21-5 and 31-1 (also Exs. 1-2 to Simon subpoena) (evidence that Duarte has been involved in deals to lease space from Simon for Quick Fix wireless accessory and repair retail stores) and First Skouras Decl. ¶ 61 (Duarte has contacted multiple leasing agents with Simon to discuss opening wireless accessory and repair stores in shopping

covenant by competing in the wireless accessory and repair space is already overwhelming, Plaintiffs should be entitled to take discovery to corroborate that evidence, to determine the complete scope of Duarte's unlawful competition, and to determine whether Duarte has violated this Court's Preliminary Injunction Order.

Duarte's assertion that the subpoenas, in addition to requiring production of

---

malls controlled by Simon); Doc. 54-1, pp. 28-40 (Subpoena to Macerich) *with* Doc. 5-19 (also Ex. 1 to Macerich subpoena) (while attending May 2015 RECon and SPREE shopping center conventions in Las Vegas, Duarte scheduled meeting with leasing agent for Macerich); Doc. 54-1, pp. 51-63 (Subpoena to General Growth Properties ("GGP")) *with* Doc. 5-14 (also Ex. 1 to GGP subpoena) (evidence that Duarte is involved in the operation of a Quick Fix wireless repair retail store in the Staten Island Mall, operated by GGP); Doc. 54-1, pp. 100-114 (Subpoena to Taubman) *with* Doc. 5-15 (also Ex. 1 to Taubman subpoena) (evidence that Duarte was involved in communications with Taubman regarding the potential leasing of space in the Mall at Short Hills to operate a "cellular Accessories [sic] and repair service"); Doc. 54-1, pp. 64-81 (Subpoena to Peace Electronics Corporation) *with* Doc. 5-15 (also Ex. 1 to Peace Electronics Corporation subpoena) (evidence that Duarte and Uzeyir Tari of Peace Corporation have worked together in connection with the Short Hills leasing opportunity) and Doc. 19-7 (e-mail from Mr. Tari confirming that he "contracted [with Duarte] to help me get more locations with people I don't know" and "to work to get locations") and Second Skouras Decl. ¶ 8 (evidence of Duarte's work for Peace Corporation and its retail wireless stores operating under the name Fix Color & More); Doc. 54-1, pp. 82-99 (Subpoena to Uzeyir Tari) *with* same evidence referenced above for Peace Corporation. Plaintiffs issued a subpoena to Starwood Retail Partners because Starwood contacted Plaintiffs in January 2016 to indicate that Starwood was considering entering two leasing deals with someone named "Michael Anthony," a possible pseudonym for Duarte, on behalf of "The Fix." Plaintiffs also have reason to believe that Duarte may have recently been involved in leasing space from Simon at the Mall of Georgia for wireless stores operating under the name The Fix.

communications regarding his activities in the wireless accessory and repair industry, may also require the production of documents relating to Duarte's alleged involvement in the holiday ornament or solar industries is not a basis to quash or limit the subpoenas.  First, Duarte's confidentiality objection with respect to such information is meritless because there is no competitive threat in disclosing such information to Plaintiffs, who do not work in the holiday ornament or solar industries.  *See* Motion to Quash at 6 (¶ 8).  Second, depending on the nature of the communications, the third-party mall operators may not have a basis to distinguish between Duarte's communications with them seeking to lease space for wireless retail stores and other retail stores, necessitating the production of all communications with Duarte to allow Plaintiffs the opportunity to take further discovery.

Furthermore, Duarte's communications with third-parties about leasing issues are relevant to claims in this case, even if not related to the wireless industry, because Plaintiffs have also asserted a claim against Duarte for breaching his non-disclosure covenants, by improperly using and disclosing Plaintiffs' confidential information regarding retail locations and opportunities, leasing information, and information regarding mall operators.  *See* First Amended Compl. ¶ 58.  Finally, the positions Duarte has taken in this litigation have made his

dealings in these other industries potentially relevant. Duarte himself has repeatedly raised his involvement in these other industries. *See*, *e.g.*, Declaration of Michael Duarte [Doc. 19] ¶¶ 31-34; Doc. 38-1; Doc. 40 at 13-14 (arguing that the preliminary injunction has "hampered Duarte's efforts to pursue gainful employment" and has allegedly caused Duarte to lose opportunities to work with mall operators and Peace Corporation outside of the wireless industry). Therefore, even if the subpoenas could lead to the production of certain documents beyond Duarte's involvement in the wireless accessory and repair industry, the subpoenas should not be quashed or modified.[6]

### 2. Plaintiffs' Need for Discovery Outweighs Duarte's Alleged Claim of Confidentiality.

"The Supreme Court has held that 'there is no absolute privilege for trade secrets and similar confidential information.'" *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006) (*quoting Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979)). Even if a party's claims of confidentiality are sincere, courts still must weigh the need for discovery against the claim of confidentiality.

---

[6] Plaintiffs also note that it is the nature of discovery that some documents that are not germane to the litigation will be captured by discovery requests. Although inconvenient, this nearly unavoidable result is not a reason, standing alone, to deny Plaintiffs the opportunity to discover pertinent evidence.

*Id.*; *In re Mentor Corp.*, 2010 WL 234797 at *2. If the issuing party shows a "substantial need for the testimony or material that cannot be otherwise met without undue hardship and ensures that the subpoenaed party will be reasonably compensated," the court may nonetheless order production of the confidential documents. Fed. R. Civ. P. 45(d)(3)(C); *Fadalla*, 258 F.R.D. at 506.

When faced with similar circumstances, courts rarely grant motions to quash. Even if there is, unlike here, a showing of a legitimate confidentiality concern, courts generally opt instead to allow at least partial, and sometimes unrestricted, access to the information. *In re Mentor Corp.*, 2010 WL 234797 at *2 (finding that even if the movant's internal studies on allegedly defective product qualified as trade secrets, the requesting party had a substantial need for the documents because the feasibility of a safer alternative design was a central issue in the case); *In re Subpoena of DJO*, *LLC*, 295 F.R.D. 494 (in action for breach of non-compete, non-disclosure, and non-solicitation provisions, former employer had substantial need for competitor's (and current employer's) confidential sales agreements and transaction records with customers serviced by former employees).

Plaintiffs' need for the requested discovery is substantial. As shown above, the requested communications are directly and centrally relevant to the issue of whether Duarte has violated his non-competition and non-disclosure agreements.

Moreover, Duarte cannot possibly have a legitimate interest in protecting the confidentiality of his communications with mall operators in violation of his contractual covenants.  Furthermore, as this Court has previously held, it is likely that Duarte, "in the course of consulting and negotiating leases on behalf of a competitor, would utilize and even have to disclose some of [the] knowledge developed in the course of his work with Plaintiffs."  Preliminary Injunction Order at 18.  It took years for Plaintiffs to develop leasing strategies, and if Duarte is using that information in violation of the Franchise Agreement and Preliminary Injunction Order, the harm to Plaintiffs will be irreparable.  *See id.*  Duarte's use and disclosure of Plaintiffs' confidential information in his possession will dilute Plaintiffs' brand and competition by Duarte will undermine Plaintiffs' current franchise system.  *See id.*  The only way for Plaintiffs to determine whether Duarte is disclosing Plaintiffs' leasing strategies and using such information to his competitive advantage is through the requested discovery.  To limit the scope of discovery as narrowly as Duarte requests, especially in light of the fact that Duarte has not presented *any evidence* of *what* information is confidential, would "operate to render [Duarte] the final arbiter" of what information is discoverable.  *Carnes*, 244 F.R.D. at 698.

        Although Duarte has not established the existence of any confidential

information belonging to him, Plaintiffs are willing to enter into a reasonable confidentiality stipulation and protective order to govern discovery and ensure the protection of any legitimately confidential materials produced in discovery, provided that Plaintiffs maintain their ability to use all relevant materials to prosecute their claims in this action.  Plaintiffs disagree, however, that any of Duarte's communications with mall operators reflecting Duarte's unlawful competition with Plaintiffs should be limited to attorneys' eyes only treatment given that Plaintiffs have a right and need to know of Duarte's improper competitive threat to their business.

Because Plaintiffs' need for the requested documents outweighs Duarte's sweeping claim of confidentiality, the Court should deny Duarte's Motion in its entirety.  *In re Mentor Corp.*, 2010 WL 234797, at *2; *In re Subpoena of DJO, LLC*, 295 F.R.D. at 494.  To the extent the Court has any concerns about Duarte's confidentiality claim, such concerns should be alleviated by the fact that Plaintiffs are willing to negotiate and enter into a protective order governing discovery materials.

## <u>Conclusion</u>

For all of the foregoing reasons, the Court should deny Duarte's Motion to Quash.

This 28th day of March, 2016.

Respectfully submitted,

**PARKER, HUDSON, RAINER & DOBBS, LLP**

*s/ Jared C. Miller*
Ronald T. Coleman, Jr.
Georgia Bar No. 177655
rcoleman@phrd.com
Jared C. Miller
Georgia Bar No. 142219
jmiller@phrd.com
Katrina L. Hodges
Georgia Bar No. 336997
khodges@phrd.com
303 Peachtree Street, NE
Suite 3600
Atlanta, Georgia  30308
Telephone:  (404) 523-5300
Facsimile:   (404) 522-8409

*Attorneys for Plaintiffs Cellairis Franchise, Inc. and Global Cellular, Inc.*

# **CERTIFICATE OF COMPLIANCE**

In compliance with LR 7.1D, N.D. Ga., I certify that the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO QUASH OR MODIFY THIRD-PARTY SUBPOENAS** has been prepared in conformity with LR 5.1, N.D. Ga. This memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch. This memorandum is proportionately spaced, and is no longer than 25 pages.

s/ Jared C. Miller
Jared C. Miller

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 28, 2016, I electronically filed the foregoing

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO QUASH OR MODIFY THIRD-PARTY SUBPOENAS** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

>Mark Alexander – malexander@smf-law.com
>J. Douglas Stewart, Sr.
>Stewart Melvin & Frost, LLP
>P.O. Box 3280
>Gainesville, Georgia 30503
>
>Alejandro Brito - abrito@zarcolaw.com
>Beshoy Rizk - brizk@zarcolaw.com
>Zarco Einhorn Salkowski & Brito, P.A.
>Miami Tower
>100 S.E. Second Street, 27th Floor
>Miami, Florida 33131

I also on March 28, 2016 served copies of this filing on the following non-parties by causing copies thereof to be deposited in the U.S. mail, first-class postage prepaid, addressed as follows:

>The Taubman Company, LLC
>c/o Chris B. Heaphy (Registered Agent)
>200 East Long Lake Road
>Bloomfield Hills, Michigan 48304
>
>General Growth Properties, Inc.
>c/o Corporation Service Company (Registered Agent)
>2711 Centerville Road, Suite 400
>Wilmington, Delaware 19808

Macerich Property Management Company, LLC
c/o Darlene David, Esq.
VP, Senior Real Estate Counsel
401 Wilshire Boulevard, Suite 700
Santa Monica, California 90401

Simon Property Group, Inc.
c/o Rebecca M. Lamberth, Esq.
Duane Morris LLP
1075 Peachtree Street NE, Suite 2000
Atlanta, Georgia 30309

Starwood Retail Partners, LLC
c/o CT Corporation System (Registered Agent)
208 South LaSalle Street, Suite 814
Chicago, Illinois 60604

Peace Electronics Corporation
c/o Mr. Uzeyir Tari (Registered Agent)
33 C State Route 17 South
East Rutherford, New Jersey 07073

Mr. Uzeyir Tari
33 C State Route 17 South
East Rutherford, New Jersey 07073

This 28th day of March, 2016.

s/ Jared C. Miller
Jared C. Miller